IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK11-40957-TJM |
| TRACY DAWN RENZ, ) | A11-4172-TJM |
| ) | |
| Debtor(s) ) | CHAPTER 7 |
| ROBERT B. DECK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| TRACY DAWN RENZ, ) | |
| ) | |
| Defendant. ) | |

ORDER

      Trial on the adversary complaint, Fil. #1, was held in Lincoln, Nebraska, on December 7, 2011. Robert B. Deck appeared pro se and Tracy Dawn Renz appeared pro se.

      This adversary proceeding is brought by Robert B. Deck, an attorney practicing in Sioux City, Iowa, as a request for determination of non-dischargeability of a debt for attorney fees. The statutory provision relied upon by Mr. Deck is 11 U.S.C. § 523(a)(2)(A).

      In the summer of 2009, Ms. Renz was involved in a dissolution of marriage action in Hall County, Nebraska. She was, at that time, the mother of three children and, according to her trial testimony, was in an abusive relationship with her husband. Unbeknownst to her, her husband had set up a secret post office box and directed all of the bills from creditors to be sent to that post office box. He then did not pay the bills and her checking account was regularly garnished.

      On the advice of a counselor who feared that Ms. Renz and the children would be subject to violence, she left Grand Island and took the children to Sergeant Bluff, Iowa, a city south of Sioux City, Iowa. Her husband then obtained a court order citing her for contempt for removing the children from the state of Nebraska during the pendency of the dissolution of marriage action.

      Ms. Renz made an appointment with Mr. Deck and requested that he represent her in the contempt hearing and the dissolution action. According to her testimony, she explained to Mr. Deck that, because of the garnishments of her checking account, she had arranged to have her paycheck direct-deposited to her father's checking account in Grand Island. When she received bills, she would request her father to write a check, using her money, to pay the bill. At the initial meeting with Mr. Deck, Ms. Renz presented him with a check, drawn on her father's checking account, in the amount of $2,500 as a retainer.

      Although the parties discussed Mr. Deck's hourly rate, they do not agree on the amount

of the hourly rate that was actually discussed.

Mr. Deck, who is admitted to the practice of law in Nebraska, agreed to provide legal services to Ms. Renz. He traveled to Grand Island to represent her at the contempt hearing. When the judge ordered her to return the children to Nebraska, she did so.

At the time of Ms. Renz's first meeting with Mr. Deck, she was unemployed because she had quit her job in Grand Island to move the children to Iowa. However, within a few days after the move, she obtained employment in Iowa.

Ms. Renz claims that at the hearing in Grand Island, she provided Mr. Deck with another check written on her father's checking account, in the amount of $300. Mr. Deck has no recollection of that payment and it does not appear to have been applied to the bills represented by invoices he sent to her, which invoices were admitted into evidence at Fil. #14.

Ms. Renz testified that, in addition to the first check for $2,500 and the second check for $300, she sent one more check in an amount that she is uncertain of. However, it also does not show as being applied and Mr. Deck testifies he recalls nothing about it.

In contrast to the testimony of Ms. Renz as to the details of the discussions concerning the required payment of attorney fees, Mr. Deck testified that at the first meeting with Ms. Renz she gave him a check from her father's checking account. He testified that she did not say anything about the fact that the money represented by the check was her money and did not explain to him anything about having her paycheck direct-deposited to her father's checking account. Instead, Mr. Deck states that Ms. Renz told him that if she was unable to make future payments on his attorney fees, her father would do so.

Mr. Deck did not enter into a written attorney fee agreement and did not verify with Ms. Renz's father that he would stand as a guarantor of her legal fees.

Ms. Renz testified that she never told Mr. Deck that her father would make payments if she could not and testified that her father had never made any payments on her behalf on any bills. Her father then testified to the same. He denied having agreed to pay Ms. Renz's attorney fees and agreed with Ms. Renz that he had never made any payments on her bills in her adult life.

Mr. Deck believes that Ms. Renz lied to him about her father's guarantee to induce him to provide legal services to her with no intention of making any payments after the initial retainer. Because of that, he believes that the judgment he obtained against her should be held to be non-dischargeable. As mentioned above, she denies that she made any statements concerning her father's willingness to pay the fee and testified that she had a job before she moved to Sergeant Bluff, Iowa and she had a job within a few days after meeting with Mr. Deck and believed that she would be able to make the necessary payments. She testified that she never intended to refuse or fail to pay Mr. Deck's bill or any other bills that she included in the bankruptcy case. She testified that she was unable to pay Mr. Deck after the divorce decree was entered because her husband was not paying the child support or day care expenses he had been ordered to pay and she was required, on her own, to pay for rent, food, and day care for three children on a limited income and was simply overwhelmed by her debts, including that of Mr. Deck.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010).

"Justifiable reliance" is the appropriate standard to apply under § 523(a)(2)(A), and is a lower standard than "reasonable reliance," entailing no duty to investigate. Treadwell v. Glenstone Lodge, Inc. (In re Treadwell), 423 B.R. 309, 314 (B.A.P. 8th Cir. 2010) (citing Field v. Mans, 516 U.S. 59 (1995)). However, a creditor cannot rely upon false representations if the falsity is obvious. Id. at 315.

I find as a fact that the debtor did not make a representation to Mr. Deck that her father would make the payments if she was unable to do so. Perhaps Mr. Deck misunderstood the situation because the initial retainer check that he received was from her father.

Both Mr. Deck and Ms. Renz are credible witnesses. They simply have totally different points of view as to what occurred, including the substance of the initial conversation about the amount of the hourly fees, the source of the payments, and Ms. Renz's father's contributions. Since it is the burden of Mr. Deck as the creditor to prove that a representation was made, that it was made at a time when the debtor knew the representation was false, and that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving Mr. Deck, he needed more than his recollection of the conversation to meet that burden.

IT IS ORDERED: I find in favor of the defendant, Ms. Renz, and against the plaintiff, Mr. Deck, and find that the debt represented by the judgment obtained in favor of Mr. Deck is discharged. Separate judgment will be entered.

DATED:    January 18, 2012

BY THE COURT:

/s/ Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
  *Robert B. Deck
  Tracy Dawn Renz
  U.S. Trustee

*Movant is responsible for giving notice to other parties if required by rule or statute.